KELLER, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*October 14—November 8, 1955.*

For the appellant there was a brief and oral argument by *N. Paley Phillips* of Milwaukee.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent International Harvester Company there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *Carl Neprud Otjen.*

FAIRCHILD, C. J. The nature of the controversy and the principles of law involved are set forth in that portion of Judge REIS' opinion in which he said there was "presented a question of fact for the commission and, upon familiar principles, the commission's finding must be sustained, if supported by any credible evidence or reasonable inference."

Appellant was injured May 7, 1949, in the course of his employment at the International Harvester Company. The injury occurred when he stepped down from a large fan in a crane to a four-wheel shop truck and then from the truck to the ground level. In reaching for the ground level, his left foot struck a 4″ x 8″ block of wood, and he fell backward. He was treated by Dr. Schulz, a company doctor, and returned to work on May 31, 1949. He was compensated for that period of disability. Although he was seen by the company's medical department on several occasions up to August 29, 1949, he had no complaints with respect to his back, and on that date the case was closed with the determina-

tion of no permanent disability. About ten months after his fall from the fan, appellant complained of a backache but gave no history of injury. There followed two more complaints of backache, one on August 22, 1950, and one on November 1, 1950. The first of these was traced to the use of a pry bar, and the second was the result of lifting. On July 9, 1951, he reported a pain in the lower back but gave no history of injury. He made no further complaints of pain in the back prior to his termination of employment at International Harvester Company in March, 1952. On cross-examination, appellant stated that he "saw no doctors following my active treatment immediately after the injury until I saw a chiropractor . . . in March of 1953." He then sought no treatment until October 23, 1953, when he saw Dr. Krueger, whom he visited a maximum of six times up to the day of the hearing. Since leaving the International Harvester Company, applicant has been engaged as a cement worker and finisher, an occupation which requires him to lift bags of cement weighing upwards of 70 pounds. The applicant's symptoms in 1953 were due to using a sledge hammer. On cross-examination he testified: "I was using a sledge hammer to drive a stake into the ground when I felt that snap in my back a few weeks ago."

There is a dispute between the medical experts over the actual existence of any continuity between the complaints of applicant of July, 1954, and the injury he suffered May 7, 1949. Dr. Krueger was of the opinion that a permanent partial disability had resulted from his fall in 1949, and that his complaints in July, 1954, grew out of that fall. However, Dr. Krueger did not examine Keller until October 23, 1953, four and one-half years after the accident, and he testified that he had to base his opinion on case history. The case history contained a statement by Keller that he had fallen seven feet, whereas, his fall was backward from the ground level. Dr. Sadoff, an orthopedic surgeon, who concluded that

Keller had a 10 per cent permanent partial disability, also based his opinion on the history obtained from Keller in which he said that he had fallen seven feet.

Testimony supporting the commission's findings, however, was given by Dr. Schulz and Dr. Brewer. Dr. Schulz testified that Keller was called in to his employer's medical department on August 29, 1949, for final evaluation, and that "on that date he had no complaint regarding the right elbow, there was no pain, all motions were free. Regarding the left ankle, there was no pain or swelling. All motions were free. Regarding the back, there was no complaint, he flexes to the floor without pain, lateral and twisting free and without pain. Straight leg raising to 80 degrees and without pain. No muscle spasm. The case was closed, no permanent disability." Dr. Schulz was unwilling to give an opinion as to disability at the time of the trial, because he had not examined Keller recently. He (Dr. Schulz) was then asked "At the time you last saw him, will you state what your opinion was at that time?" and he answered: "That he presented no permanent disability."

Dr. Brewer, who first examined Keller on June 17, 1953, made the following statement in his testimony: "Well, from my examinations I have not found him to be disabled." He further testified: "The fact that the testimony of Dr. Schulz this morning indicated that he had recovered without permanent disability, the fact that I had examined him in the interval of June, 1953, and found some limitation of motion of his back, but no acute disability, there is some lack of continuity of cause and effect. He hasn't any, it has never been proven that he has ever had any disability until Dr. Krueger saw him. That has all been the last two months."

The principle of law involved here is stated in the recent decision in *Brouwer Realty Co. v. Industrial Comm.* (1954), 266 Wis. 73, 78, 79, 62 N. W. (2d) 577, where the court said:

". . . this court in reviewing findings of the Industrial Commission in workmen's compensation cases does not pass upon the weight of the evidence or the credibility of witnesses. . . . The credibility of expert witnesses in proceedings under the Workmen's Compensation Act is for the commission to determine. *General A. F. & L. Assur. Corp. v. Industrial Comm.* (1937), 223 Wis. 635, 271 N. W. 385.

"It is the function of the commission to evaluate medical testimony and decide the weight of same. . . .

"The commission's finding on disputed medical testimony is conclusive."

See also *Harnischfeger Corp. v. Industrial Comm.* (1948), 253 Wis. 613, 34 N. W. (2d) 678; *Milwaukee E. R. & T. Co. v. Industrial Comm.* (1951), 258 Wis. 466, 46 N. W. (2d) 198; *Wisconsin Power & Light Co. v. Industrial Comm.* (1955), 268 Wis. 513, 68 N. W. (2d) 44; *Dentice v. Industrial Comm.* (1948), 254 Wis. 159, 35 N. W. (2d) 218; *Nystrom v. Industrial Comm.* (1928), 196 Wis. 406, 220 N. W. 188.

"The extent of disability, temporary and permanent, was a question of fact. . . ." *Gallenberg v. Industrial Comm.* (1955), 269 Wis. 40, 43, 68 N. W. (2d) 550. "In view of the provision of sec. 102.23 (1), Stats., that the Industrial Commission's findings of fact are conclusive, such findings must be sustained if there is any credible evidence to support them." *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 56 N. W. (2d) 525. Under the circumstances disclosed by the record, the trial court properly ruled that there was credible evidence to sustain the finding of the commission to the effect that Peter P. Keller did not sustain any permanent disability as a result of his injury of May 7, 1949.

*By the Court.*—Judgment affirmed.