Minnie JOHNSON, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, In-Sink-Erator Division of Emerson Electric Company and Liberty Mutual Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 92–2830. Submitted on briefs April 13, 1993.—Decided June 16, 1993.*

(Also reported in 503 N.W.2d 1.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John S. Jude* of *Albert, Jude, Shuman, & Simanek, S.C.* of Racine.

On behalf of the defendant-respondents, the cause was submitted on the briefs of *James E. Doyle*, attorney general, *Stephen M. Sobota*, assistant attorney general and *Michael C. Frohman* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J. Minnie Johnson appeals from a judgment of the trial court affirming the decision of the Labor and Industry Review Commission (LIRC) which held that Johnson is not entitled to benefits under sec. 102.61, Stats. Johnson argues that a home-based enterprise program is compensable under sec. 102.61. We agree that persons participating in home-based enterprise programs may qualify for sec. 102.61 benefits, but hold that Johnson does not qualify. The reason is that her program does not provide for instruction on a regular basis which either enhances her existing job skills to make them marketable or gives her new marketable job skills. Therefore, we affirm.

Minnie Johnson became permanently disabled while employed by In-Sink-Erator as a drill press operator. Under the worker's compensation statutes she received temporary total disability, permanent partial disability and medical expenses. In-Sink-Erator was unable to return Johnson to work so she applied to the Division of Vocational Rehabilitation (DVR) of the Department of Health and Social Services for assistance. Johnson informed DVR that before working for In-Sink-Erator she was employed as a power sewing operator.

DVR classified Johnson as "handicapped" under the Federal Vocational Rehabilitation Act and certified her as being eligible to receive DVR's services. The four

basic services which DVR provides "handicapped" persons are: (1) job placement, (2) on-the-job training, (3) retraining, and (4) home-based enterprise. The individualized written rehabilitation program formulated for Johnson outlined DVR's plan to provide Johnson with home-based enterprise services. Under this program, Johnson would become self-employed and self-supporting as a tailor. DVR purchased the sewing equipment and supplies for her and Johnson received instructions on the use of the equipment from the equipment retailer. The retailer was also available for consultation if Johnson experienced any problems. DVR provided Johnson with counseling and guidance, and consultation with home-based enterprise teachers. DVR anticipated that Johnson would enroll in some basic business classes to assist her in operating her business.

Johnson applied to the Department of Industry, Labor and Human Relations (DILHR) for "retraining benefits"[1] under secs. 102.43(5) and 102.61, Stats. After a hearing, the administrative law judge (ALJ) dismissed Johnson's application under sec. 102.61. The ALJ reasoned that sec. 102.61 is intended to be a "retraining program" to assist an injured employee when that employee has no other marketable skills. Because Johnson already had extensive sewing skills, DVR's assistance went to *enhancing* her skills, not

---

[1] Although Johnson refers to the benefits provided by sec. 102.61, Stats., as "retraining" benefits, this term is not found in the statutes or administrative code. Those authorities refer to benefits conferred for a person receiving "rehabilitation" under the federal vocational rehabilitation act, 29 U.S.C. §§ 701–796. Because the term "retraining" may not include all types of rehabilitation for which the benefits are offered, we decline to use that term.

*acquiring* new skills. The ALJ also concluded that the home-based enterprise program was not included within sec. 102.61 because it provided only minimal instruction on an "as needed" basis, with no set instructional course load.

Johnson appealed to LIRC. Adopting the ALJ's findings of fact and order to deny benefits, LIRC affirmed. LIRC's analysis took a slightly different tack from the ALJ. LIRC held that the provisions of sec. 102.61, Stats., "clearly envision that the applicant would be enrolled in a formal course of training, such as a retraining program, in order to be eligible for benefits." LIRC stated that the program established for Johnson by DVR did not provide instruction which required regular attendance and was merely an "orientation to operate the equipment" which "utilized her existing skills to establish a home based business." Concluding that Johnson was not enrolled in a course of instruction as contemplated by sec. 102.61, LIRC upheld the ALJ's order.

Johnson then asked the circuit court for Racine county to review LIRC's decision. The circuit court confirmed the decision. It concluded that sec. 102.61, Stats., had been reasonably interpreted and applied by LIRC to the facts of the case. The circuit court also noted that LIRC's interpretation "successfully carries out the intent of the act without making administration impossible."

STANDARD OF REVIEW

Whether Johnson should be allowed benefits under sec. 102.61, Stats., is a mixed question of law and fact. We scrutinize the commission's factual and legal findings, not the circuit court's. *See Racine Unified*

*School Dist. v. LIRC,* 164 Wis. 2d 567, 583, 476 N.W.2d 707, 713 (Ct. App. 1991). The parties' conduct presents questions of fact which are conclusive on appeal in the absence of fraud. Section 102.23(1)(a), Stats. The interpretation of sec. 102.61 presents a question of law. *Lisney v. LIRC,* 171 Wis. 2d 499, 505, 493 N.W.2d 14, 16 (1992). Although "the 'blackletter rule' is that a court is not bound by [a commission's] interpretation," courts will give varying degrees of deference to a commission's interpretation based on four factors: (1) whether the legislature charged the commission with the administration of the law, (2) if the commission's interpretation is longstanding, (3) if the commission's interpretation entails its expertise, and (4) whether the interpretation and application of the statute by the commission can provide uniformity and consistency in the field of its specialized knowledge. *Id.*

Johnson agrees that the commission is charged with the administration of the law, but claims that the remaining factors enumerated in *Lisney* should lead us to ignore LIRC's interpretation and address the interpretation of sec. 102.61, Stats., *de novo.* We decline to do so.

Much of Johnson's argument supporting *de novo* review is centered upon an overly broad view of the scope of LIRC's inquiry in the interpretation and application of sec. 102.61, Stats. Johnson argues that DVR has more experience and expertise than LIRC to interpret "rehabilitation training" and to determine the permissible methods of rehabilitation training. That may or may not be true, but those inquiries are not the focus of this appeal.

DVR determines what services and goods a handicapped individual may receive pursuant to 29 U.S.C.

§ 723, which are incorporated into the individualized rehabilitation program pursuant to 29 U.S.C. § 722(b). Included within the definition of vocational rehabilitative services in 29 U.S.C. § 723(a) is "vocational and other training services," 29 U.S.C. § 723(a)(3), but the definition recognizes that the concept is broader to include "any goods or services necessary to render a handicapped individual employable."

In this case, LIRC's decision does not travel to Johnson's right to receive benefits under the federal rehabilitation act. Instead, LIRC has analyzed Johnson's claim for travel expenses and maintenance under sec. 102.61, Stats. Claimants apply to DILHR, not DVR for these benefits. *See Dane County Hosp. & Home v. LIRC,* 125 Wis. 2d 308, 319, 371 N.W.2d 815, 822 (Ct. App. 1985). DILHR and LIRC make all determinations under sec. 102.61. Not all persons receiving goods and services provided by the rehabilitation programs are entitled to travel expenses and maintenance under sec. 102.61—only those "receiving *instructions*" under the vocational rehabilitation act. Section 102.61(1) (emphasis added). Although DVR may have more expertise in interpreting what services, goods and training may be provided under the federal vocational rehabilitation act, that is an interpretation of a broader concept than "receiving instructions." In addition, DVR never needs to interpret "receiving instructions" when formulating a rehabilitation program.

LIRC, in its various forms, has been responsible for the administration of the rehabilitation provisions now found in sec. 102.61, Stats., since the statute's inception in 1921. *See* sec. 2394–9m, Stats. (1921). Published appellate cases are scant showing LIRC's interpretation of the statute, but the cases which do exist span a number of years. *See Massachusetts Bond-*

*ing & Ins. Co. v. Industrial Comm'n,* 275 Wis. 505, 82 N.W.2d 191 (1957); *Dane County Hosp. & Home,* 125 Wis. 2d 308, 371 N.W.2d 815; *Beloit Corp. v. LIRC,* 152 Wis. 2d 579, 449 N.W.2d 299 (Ct. App. 1989). That few cases have reached the appellate court level is hardly surprising considering the number of decision makers to which a claimant must present the case en route to the court of appeals or supreme court. In this case, for example, we are the fourth decision maker to address the claimant's arguments. We conclude that LIRC has specialized experience and expertise to interpret sec. 102.61 and will consider its interpretation when making our review.

### Was Johnson "Receiving Instructions" Within the Meaning of sec. 102.61, Stats.?

■ LIRC held that the provisions of sec. 102.61, Stats., encompass formalized courses of instruction only. LIRC implied that such courses would require regular attendance, and go beyond a mere "orientation to operate the equipment." This decision was based upon construing sec. 102.61 as a whole. That section provides in relevant part:

> **Indemnity under rehabilitation law.** (1) An employe who is entitled to receive and has received compensation under this chapter, and who is entitled to and is *receiving instructions* under the vocational rehabilitation act, and amendments thereto, [29 U.S.C. §§ 701–796] as administered by the state in which the employe resides . . . shall, in addition to other indemnity, be paid the actual and necessary expenses of travel and, if the employe receives instructions elsewhere than at the place of residence, the actual and necessary costs of mainte-

nance, during rehabilitation, subject to the following conditions and limitations:

(a) The employe must undertake the *course of instruction* within 60 days from the date when the employe has sufficiently recovered from the injury to permit so doing, or as soon thereafter as the officer or agency having charge of the instruction shall provide opportunity for the rehabilitation.

(b) The employe must continue in *rehabilitation training* with such *reasonable regularity* as health and situation will permit.

(c) The employe may not have expenses of travel and costs of maintenance on account of training for a period in excess of 40 weeks in all, except as provided in s. 102.43 (5).

**(2)** The department shall determine the rights and liabilities of the parties under this section in like manner and with like effect as it does other issues under compensation.

Section 102.61 (emphasis added). LIRC's interpretation of the statute is a reasonable one. We agree that Johnson's "orientation to operate the equipment" which did not require regular attendance does not satisfy the statute. The language of the statute contemplates a course of instruction requiring regular attendance.

Although we are affirming LIRC's interpretation, we feel it necessary to point out that our holding should not be read as narrowly as LIRC and In-Sink-Erator have stated on appeal. Recipients of benefits under sec. 102.61, Stats., are not limited to those receiving the retraining services of DVR. Recipients of job placement, on-the-job training, and home-based enterprise services may also be eligible if their individualized written rehabilitation programs provide for instruction on a regular basis. For example, if Johnson's home-

based enterprise program required that she take a class in accounting, such training would qualify under sec. 102.61. We also note that the statute does not require that the training be taught by educational institutions or be limited to classroom instruction only. Instruction which takes place on a regular basis may qualify.

In-Sink-Erator also argues that "instruction" must be interpreted narrowly because sec. 102.61, Stats., does not intend to provide benefits related to assistance in writing a resume or applying for jobs. We agree that "instruction" does not contemplate these types of services. Instead, it encompasses training which provides marketable job skills or enhances existing job skills to make them marketable.

*By the Court.*—Judgment affirmed.